Filed 3/1/16  In re F.T. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re F.T., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEPHANIE H.,<br><br>Defendant and Appellant. | F072329<br><br>(Super. Ct. No. 516454)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Roshni Mehta, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P.J., Kane, J. and Poochigian, J.

## INTRODUCTION

Appellant Stephanie H. (mother) appeals from the Welfare and Institutions Code[1] section 366.26 order terminating her parental rights to her daughter, F.T., born in September 2011. Mother's sole claim is that the juvenile court erred when it found that the Indian Child Welfare Act (25 U.S.C. §§ 1901 et seq. (ICWA)) did not apply because the finding was not supported by adequate inquiry or notice on the part of the juvenile court and the Stanislaus County Community Services Agency (department). Mother did not appeal from the order finding ICWA inapplicable and asks this court to reconsider its holding in *In re Pedro N.* (1995) 35 Cal.App.4th 183 (*Pedro N.*). We decline to do so and affirm.

## FACTS AND PROCEDURAL HISTORY

Since mother does not challenge the juvenile court's jurisdictional finding, dispositional ruling, or findings supporting its decision to select adoption as the permanent plan and terminate parental rights, a detailed summary of the evidence supporting these rulings is unnecessary. The department detained F.T. in October 2012 after she was brought to the emergency room for unexplained injuries, including a near drowning, bruises, and lacerations, for the fifth time in a period of four months. The department petitioned on October 26, 2012, pursuant to section 300 to have F.T. declared a dependent of the juvenile court.

The petition filed by the department included a completed Indian Child Inquiry Attachment form (ICWA-010(A)) which contained a mark in the box next to the statement, "The child may have Indian ancestry." Mother completed a Parental Notification of Indian Status form (ICWA-020) stating she may have Cherokee and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2.

Navajo ancestry. The father also completed an ICWA-020 form, stating he had no known Indian ancestry.

A completed Notice of Child Custody Proceedings for Indian Child, form ICWA-030, was completed by the department, giving notice of the jurisdiction and disposition hearing. That form indicated that F.T. might have Cherokee ancestry; no mention of Navajo ancestry is made on the form. The completed form was served on mother, the father, the Bureau of Indian Affairs (BIA), the Secretary of the Interior (Secretary), the Cherokee Nation of Oklahoma, the United Keetoowah Band of Cherokee Indians, and the Eastern Band of Cherokee Indians. An amended form ICWA-030 was filed and served on the same tribes, the BIA, and the Secretary.

The combined jurisdiction and disposition report filed November 15, 2012, notes that F.T. may have Indian ancestry because mother reported having Cherokee and Navajo ancestry.

A jurisdictional hearing was held January 31, 2013. The juvenile court found that F.T. came within the provisions of section 300, subdivision (b). The disposition hearing was held on that same day, F.T. was declared a dependent, and mother was offered reunification services. Mother was informed by the juvenile court that she had a right to file an appeal and that if she had any questions about her appeal rights, to "discuss those with your attorney."

On May 28, 2013, a second amended ICWA-030 was filed and this second amended ICWA-030 was served on the Cherokee Nation of Oklahoma, the Navajo Nation, and the Ramah Navajo School Board, as well as the BIA and the Secretary.

The status review report filed May 31, 2013, reflects the responses from the tribes. The Cherokee Nation of Oklahoma requested additional information, which was provided. The Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians responded that F.T. was not an Indian child. The Navajo Nation and the Ramah Navajo School Board had not yet responded.

3.

At the section 366.21, subdivision (e) hearing held on June 26, 2013, mother was present with her attorney. The juvenile court found that proper notice had been given and that the ICWA did not apply to F.T. The juvenile court informed mother that she had the right to appeal if she had "any objections" and that she had "60 days in which to file the appeal."

Services were offered to mother for 12 months; a 12-month review report was filed by the department. At the 12-month review hearing on December 12, 2013, services were ordered continued for mother. At the 18-month review hearing, services were continued for mother. On September 26, 2014, F.T. was returned to mother's care.

On February 27, 2015, a first amended section 387 petition was filed. The section 387 petition alleged that while placed with mother, F.T. had obtained bruises on her body five different times, including on the side of her head and her jawline. It also was alleged that mother had: (1) been receiving services since October 2012; (2) minimally engaged in services; (3) failed to provide a safe sleeping environment for F.T.; (4) been told numerous times to clean the home in which F.T. and mother were living; and (5) missed multiple appointments for services for F.T., including doctor's appointments. A social worker had also reported the smell of marijuana in the home during a visit.

At the detention hearing on the section 387 petition, F.T. was detained. A contested jurisdiction hearing concluded on April 16, 2015. The allegations of the section 387 petition were found true. F.T. was placed back into the foster home in which she had lived, prior to being returned to mother. The foster parents indicated a desire to adopt F.T.; they also had F.T.'s younger half-sister in their home. At the section 366.26 hearing on August 6, 2015, the juvenile court terminated mother's parental rights.

Mother filed a notice of appeal from the order terminating parental rights on September 16, 2015. The sole issue raised in the appeal is that the juvenile court's finding that ICWA does not apply is not supported by substantial evidence.

On December 29, 2015, the parties filed a "Stipulation to Immediate Limited Remand" with this court. In the stipulation, they agree to an immediate remand of this case to the juvenile court to provide ICWA notice to the Cherokee Nation, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee Indians, the Navajo Nation, the Ramah Navajo School Board, and the Colorado River Indian Tribes. It appears to contemplate that the judgment terminating parental rights is set aside, to be reinstated if the tribes respond that F.T. is not an Indian child, but reinstatement is only after mother is provided an opportunity to be heard.

By order filed December 31, 2015, this court deferred ruling on the parties' stipulation pending consideration of the appeal on the merits.

In a letter dated January 11, 2016, the department notified this court it would not file a respondent's brief.

## DISCUSSION

Mother argues the juvenile court's finding that the ICWA did not apply requires reversal and remand because the finding is not supported by substantial evidence. The department apparently agrees with mother's position on appeal, because it stipulated to a limited remand of this case. For reasons stated below, we do not accept the department's concession and affirm.

## I. ICWA

The ICWA was enacted to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture .…" (25 U.S.C. § 1902.) To achieve this purpose, the ICWA requires notice be given to the child's tribe "where the court knows or has reason to know that an Indian child is involved .…" (25 U.S.C. § 1912(a).) The tribe's response will determine if the child is an Indian child. (*Ibid.*; see also *In re Desiree F.* (2000) 83

5.

Cal.App.4th 460, 470 ["one of the primary purposes of giving notice to the tribe is to enable the tribe to determine whether the child involved in the proceedings is an Indian child."].)  An Indian tribe means a federally recognized Indian tribe.  (25 U.S.C. § 1903(8).)

State law imposes on both the juvenile court and the county welfare agency "an affirmative duty to inquire whether a dependent child is or may be an Indian child."  (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848; § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(a).)  If the agency or the court "knows or has reason to know that an Indian child is involved, the social worker … is required to make further inquiry regarding the possible Indian status of the child" to facilitate the provision of notice.  (§ 224.3, subd. (c); see also *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1200.)

The ICWA defines an Indian child as "a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (*In re H.B.* (2008) 161 Cal.App.4th 115, 120, citing 25 U.S.C. § 1903(4).)  The necessity of a biological tie to the tribe is underlined by the ICWA definition of a "parent" as "any biological parent or parents of an Indian child .…" (25 U.S.C. § 1903(9).)

## II.    ICWA Notice

Mother contends the juvenile court's finding that the ICWA did not apply was not supported by proof of proper notice or inquiry to all relevant Indian tribes.  Mother acknowledges that she failed to appeal from prior orders of the juvenile court's finding that the ICWA was inapplicable to F.T.  Mother requests that we revisit and overrule our opinion in *Pedro N.*, *supra*, 35 Cal.App.4th 183, 185, 189, which applies waiver and forfeiture to parents who wait until the termination of parental rights to first make an ICWA challenge.

In *Pedro N., supra,* 35 Cal.App.4th at pages 185 and 189, we held that a parent who fails to challenge a juvenile court's action timely regarding the ICWA is foreclosed

from raising ICWA issues, once the juvenile court's ruling is final, in a subsequent appeal from later proceedings. The proper time to raise such issues is after the disposition hearing. The juvenile court's rulings and findings at the disposition hearing are appealable upon a timely notice of appeal. We noted in *Pedro N.* that the parent there was represented by counsel and failed to appeal the juvenile court's orders from the disposition hearing. (*Pedro N., supra,* 35 Cal.App.4th at pp. 189-190.)

In the instant action, the juvenile court's finding that the ICWA was inapplicable to F.T. was made at the hearing conducted June 26, 2013. At that hearing, the court had before it the amended ICWA-030 and the social study report noting that the Cherokee Nation of Oklahoma had requested, and been provided, further information; both the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians had responded that F.T. was not an Indian child; and the Navajo Nation and the Ramah Navajo School Board had not yet responded.

Section 224.3, subdivision (e)(3) provides that the juvenile court may determine the ICWA does not apply if proper notice has been provided and neither a tribe nor the BIA has provided a determinative response within 60 days after receiving the notice. Here, the juvenile court made its finding after some tribes, the three Cherokee tribes, had received notice 60 days or more prior to the hearing, but the Navajo tribes had not.

Mother was present at the June 26, 2013 hearing with her counsel and was advised of the need to appeal if she had any objections to the juvenile court's findings and orders. She was at all times in these proceedings represented by counsel. Mother never filed an extraordinary writ or an appeal until parental rights were terminated.

There were multiple status review hearings and other hearings where mother had an opportunity to raise the ICWA issue after disposition and before termination of parental rights. When the section 366.26 hearing was scheduled, mother was required to file a writ in order to challenge any findings or orders leading to the setting of the section

7.

366.26 hearing, including any issues regarding an ICWA finding; she did not do so. (*In re Anthony B.* (1999) 72 Cal.App.4th 1017, 1021-1022.)

Section 366.26, subdivision *l,* "applies to all 'issues arising out of the contemporaneous findings and orders made by a juvenile court in setting a section 366.26 hearing.'" (*In re Anthony B.*, *supra*, 72 Cal.App.4th at p. 1022.) Section 366.26, subdivision *l*(2), provides that failure to file a writ petition for extraordinary writ review within the period specified "shall preclude subsequent review by appeal of the findings and orders made pursuant to this section."

Our holding in *Pedro N.* is fully applicable here. Mother waited until the end of the proceedings when her parental rights were terminated to object to the juvenile court's earlier rulings finding the ICWA inapplicable to this case, and by her prior silence, has forfeited her right to complain about any procedural deficiencies in compliance with the ICWA in the instant appeal. (*Pedro N., supra,* 35 Cal.App.4th at pp. 185, 189-190.)

To the extent mother relies on cases such as *In re Marinna J.* (2001) 90 Cal.App.4th 731, 737-739 and *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 261, cases that disagreed with *Pedro N.*, relying on the theory that *Pedro N.* is inconsistent with the protection and procedures afforded by the ICWA to the interest of Indian tribes, we are not persuaded. We decline mother's invitation to revisit our holding in *Pedro N.* **2**

We further note that *Pedro N.* does not foreclose a tribe's rights under the ICWA due to a parent's forfeiture or waiver of the issue for failing to file a timely appeal when procedurally entitled to do so at the conclusion of an earlier proceeding. (*Pedro N., supra,* 35 Cal.App.4th at pp. 185, 189-190; see *In re Desiree F., supra,* 83 Cal.App.4th at

---

**2**      The California Supreme Court has granted review in *In re Isaiah W.* (2014) 228 Cal.App.4th 981 (review granted 10/29/14 and depublished (S221263)) to consider whether a parent who did not appeal an earlier finding on ICWA was foreclosed from raising an ICWA issue in an appeal from a termination of parental rights.

pp. 477-478 [wherein we reversed juvenile court's denial of tribe's motion to intervene after final order terminating parental rights and invalidated actions dating back to outset of dependency that were taken in violation of ICWA].)  We note that there is no evidence in the record that any tribe responded and claimed F.T. as eligible for protection under ICWA.  Should any tribe so indicate, its rights under ICWA are not foreclosed.

In *Pedro N.* we held we were addressing only the rights of the parent to a heightened evidentiary standard for removal and termination, not those of the tribe (*Pedro N., supra,* 35 Cal.App.4th at p. 191) or, for that matter, the rights of the child.  As a result, we conclude mother has forfeited her right to complain of any alleged defect in compliance with the ICWA.

We reject the parties' stipulation.  F.T. has been in the dependency system since 2012; a family was ready and willing to adopt F.T. and provide her a stable, loving home as of August 6, 2015; and adoption procedures were initiated.  A dependent child's interest in permanency and stability requires that we adhere to the provisions of section 366.26, subdivision *l,* and that there be a time limit on a parent's ability to raise the issue of ICWA compliance.  We see no reason to create instability for F.T. when mother failed to act for a period of two years after the finding that ICWA did not apply was made by the juvenile court.  (*Pedro N., supra,* 35 Cal.App.4th at pp. 185, 189-190.)

### DISPOSITION

The "Stipulation to Immediate Limited Remand" is denied.  The order terminating parental rights is affirmed.